# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | | |
|---|---|---|
| PAUL RASMUSSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:12-cv-00059 |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Paul Eric Rasmussen ("Rasmussen") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income ("SSI") and disability insurance benefits ("DIB"), under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433; 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law, and conclude that substantial evidence supports the ALJ's decision (1) that Rasmussen's mental impairments do not meet or equal a listing, (2) that the RFC accounts for all of Rasmussen's functional impairments, and (3) that the ALJ appropriately considered the opinions of all treating sources. As such, I **RECOMMEND DENYING** Rasmussen's motion for summary judgment (Dkt. No. 9), and **GRANTING** the Commissioner's motion for summary judgment (Dkt No. 12).

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rasmussen failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Rasmussen bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment that affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to his past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## STATEMENT OF FACTS

**Social and Vocational History**

Rasmussen was born on September 3, 1968 and was a younger individual under the Act on his alleged onset date. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). R. 21. Rasmussen's date last insured is June 30, 2012, R. 163, and thus, he must show that his disability began before that

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).

Rasmussen has an associate's degree in accounting. R. 39. His past relevant work includes light, semi-skilled work as a cashier and gas station attendant, as well as medium, unskilled work as a janitor/cleaner. R. 70. Rasmussen also worked briefly as a mailroom insertion clerk. R. 205. At the hearing before the ALJ, Rasmussen testified that he has been let go from previous employment due to poor performance or customer complaints. R. 56-58. In August 2008, Rasmussen began working part-time as a cashier at Big Lots for an average of fifteen to twenty hours each week. R. 47-48. This placement is supported employment through the Virginia Department of Rehabilitative Services and Rasmussen receives weekly visits from a job coach. R. 48.

Rasmussen reported in August 2007 that his daily activities included reading books, eating meals, watching television, doing daily chores, playing computer games, and taking naps. R. 213. Rasmussen also reported that he had no problem with personal care, that he takes care of his two cats, that he prepares his own meals daily, and that he does chores including laundry, dishes, vacuuming, dusting, sweeping, mopping the floor, and mowing the yard. R. 214-15. Rasmussen attends church for several hours twice a week and also visits his married sister's home. R. 217. His mother, Kathryn Rasmussen, in August 2007 and August 2008, indicated that Rasmussen pays poor attention to his dress, hair care, and shaving needs and that he needs constant reminders to complete chores. R. 194-96. She also reported that Rasmussen does not prepare his own meals because "he overeats at every opportunity." R. 195. Mrs. Rasmussen

4

noted that Rasmussen attends church and family gatherings, but that he has poor socialization skills and does not handle stress well. R. 198-99, 238-40.

**Claim History**

Rasmussen filed for SSI and DIB, claiming that his disability began on December 10, 2006, due to limitations from type 2 diabetes, obesity, sleep apnea, pervasive developmental disorder, aortic valve replacement, and chronic Coumadin usage. R. 185. The Commissioner denied his application initially and upon reconsideration. R. 75-78. On March 8, 2010, Administrative Law Judge ("ALJ") William H. Hauser held a hearing to consider Rasmussen's disability claim. R. 32. Rasmussen was represented by counsel at the hearing.

On April 30, 2010, the ALJ denied Rasmussen's claims for DIB and SSI. R. 16. The ALJ found that Rasmussen's obesity, diabetes mellitus, neuropathy, obstructive sleep apnea, osteoarthritis of the left knee, hypertension,[2] depression, anxiety, and adjustment/developmental disorder were severe impairments. R. 21-22. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22. Considering his impairments, the ALJ found that Rasmussen retained the RFC to perform light work, except that he (1) has a five percent loss of gross and fine dexterity due to his neuropathy; (2) is limited to simple, routine tasks with no interaction with the public and occasional interaction with supervisors and peers; and (3) will miss ten days of scheduled work per year. R. 23-24.

The ALJ found that Rasmussen cannot perform his past relevant work based on the fact that those jobs entailed direct interaction with the public. R. 27. The ALJ accepted the testimony

---

[2] The ALJ listed hypertension as a severe impairment, but then explicitly noted that Rasmussen's hypertension is not severe. R. 21-22. The inconsistency is inconsequential, however, as Rasmussen has not raised any issue relating to his hypertension on this appeal.

of the vocational expert that Rasmussen can perform unskilled light work such as price marker and laundry folder, and that such jobs exists in significant numbers in the national economy. R. 28. On April 10, 2012, the Appeals Council denied Rasmussen's request for review, and this appeal followed. R. 1-4.

## ANALYSIS

Rasmussen has an extensive medical history consisting of aortic valve replacement and chronic Coumadin usage. He suffers from type 2 diabetes mellitus, which has caused him to have neuropathy. He suffers from osteoarthritis of the left knee. Rasmussen also suffers from obstructive sleep apnea, though he has a history of non-compliance with a C-PAP machine. The ALJ developed an RFC to accommodate these physical impairments, and nothing in the appeal filed by Rasmussen appears to challenge the ALJ's findings in this regard. Rather, Rasmussen claims (1) that the ALJ improperly found that his mental impairments do not meet or equal a listing, (2) that the RFC does not account for all of his functional impairments, and (3) that the ALJ did not appropriately consider the opinions of all treating sources.

**Mental Disorder Listings 12.04, 12.06, 12.08, and 12.09**

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Rasmussen argues that the ALJ incorrectly concluded that his condition did not meet or equal the requirements of either Listing 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders), or 12.09 (autistic and other pervasive developmental disorders), is not supported by substantial evidence. Pl.'s Br. 6. Indeed, Rasmussen argues that this conclusion is wholly at odds with the

6

ALJ's stated rationale and the ALJ's analysis in fact supports a finding that Rasmussen meets or equals a listing. Pl.'s Br. 8-9. I cannot agree.

To meet or equal a § 12.00 for a mental disorder, a claimant must satisfy criteria under both paragraph "A" and "B" of the particular listing. Paragraph A delineates the required medical diagnostic or clinical evidence of a mental impairment. Second, paragraph B criteria for each § 12.00 listing requires a showing of at least two functional limitations, such as (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or, (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 12.04B, 12.06B, 12.08B & 12.10B.[3] A "marked" limitation as required for Paragraph B "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Id. §12.00C. Marked is more than moderate but less than extreme. Id.

The ALJ found that Rasmussen did not satisfy the paragraph B criteria in that his limitations from his mental impairments cause only moderate restrictions in his activities of daily living, maintaining social functioning and in maintaining concentrating, persistence and pace. "Moderate limitations" are defined in 20 C.F.R. §§ 404.1520a, 416.920a as the midpoint in a five point scale of "none, mild, moderate, marked, and extreme." The decision of whether Rasmussen's limitations are moderate or marked is that of the ALJ. The ALJ must clearly articulate the reasons for his decision regarding a listed impairment. Kiernan v. Astrue, 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013). "[A] conclusory

---
[3] Listings 12.04 and 12.06 have additional functional (paragraph "C") criteria. Rasmussen does dispute the ALJ's conclusion that he does not meet the paragraph "C" criteria for these listings.

statement that a condition does not constitute the medical equivalent of a listed impairment is insufficient." Id. (quoting Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009)). However, the fact"[t]hat the ALJ did not spell out every fathomable consideration is not reversible error." Smith v. Astrue, 2:11-CV-32, 2012 WL 1435661, at *6 (N.D.W. Va. Apr. 24, 2012) (citing Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411 (6th Cir. 2006)). A cursory explanation is in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (accepting a cursory explanation under these circumstances). Ultimately, the role of this court is to examine the record to determine if substantial evidence supports the ALJ's conclusion.

While it would certainly be helpful for the ALJ to individually discuss all parts of the record relevant to whether or not Rasmussen suffers a marked degree of limitation, the lack of such detail does not undermine the ALJ's ultimate conclusion. Smith v. Astrue, 2:11-CV-32, 2012 WL 1435661, at *6 (N.D.W. Va. Apr. 24, 2012 (citing Bledsoe, 165 Fed. Appx. at 411). The ALJ stated that he completed an independent review of the entire record, and he discussed Rasmussen's own statements and medical history in detail in step four of his analysis. See R. 23-27. "Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis." Kiernan, 2013 WL 2323125, at *6 (E.D. Va. May 28, 2013) (citing Smith v. Astrue, 457 Fed. App'x 326, 328 (4th Cir. 2000)). What is required is that the ALJ's decision must have a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible. Id. (citing Diaz, 577 F.3d at 504). Thus, "remand is not warranted . . . 'where it is clear from the

record which [L]isting . . . was considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing court] readily to determine whether there was substantial evidence to support the ALJ'[s]tep [t]hree conclusion.'" Dunford v. Astrue, BPG-10-0124, 2012 WL 380057, at*3 (D. Md. Feb. 3, 2012) (quoting Schoofield v. Barnhart, 220 F.Supp.2d 512, 522 (D.Md. 2002)).

Here, the ALJ's analysis was sufficiently detailed in step three to allow for meaningful judicial review, a review of the decision as a whole indicates that the ALJ's step three conclusion is supported by substantial evidence, and that the ALJ's step three analysis does in fact support his conclusion that Rasmussen does not met or medical equal a listing.[4] The statements of Rasmussen and his mother in disability reports, along with the medical evidence considered by the ALJ and described throughout his opinion, support a finding of only moderate limitations in activities of daily living, social functioning, and in concentration, persistence, and pace. Furthermore, the ALJ stated at the conclusion of his step three analysis that the detailed discussion of the record in his step four residual functional capacity analysis informs the conclusion that Rasmussen has only moderate limitations of the paragraph B criteria. R.23.

With regard to activities of daily living, Rasmussen complains that the ALJ failed to comment upon or consider the fact that he had twice failed to live independently because he could not handle a budget, that his mother has his power of attorney because of his financial mismanagement, and that his mother picks out his clothes and reminds him to change his clothes more frequently. Pl.'s Br. 10-11. The ALJ considered reports completed by Rasmussen's mother of his activities, noting that Rasmussen pays poor attention to how he dresses and that he

---

[4] Because I find that substantial evidence supports the ALJ's decision that Rasmussen does not meet the paragraph "B" criteria for the § 12.00 listings, I do not analyze separately whether Rasmussen met any other criteria for the particular listings.

needs reminders to care for his personal appearance and to complete chores. R. 23, 194-96. The ALJ also expressly noted in step four that Rasmussen had to return to living with his parents after living on his own a couple of times because of the financial mess he created for himself while living alone. R. 24. The ALJ's opinion therefore demonstrates that ALJ considered the applicable portions of the record which relate to Rasmussen's activities of daily living. Cf. Smith, 457 Fed. App'x at 328 (finding that the ALJ adequately considered the relevant portions of record at step three based on review of the ALJ's decision as a whole). Furthermore, the ALJ's conclusion that Rasmussen does not have marked difficulties in daily living is supported by substantial evidence. As the ALJ noted, R. 23, Rasmussen reported no difficulties in activities of daily living. R. 214-15, 258. The record does not demonstrate that Rasmussen is unable to care for his personal hygiene or to complete chores, only that he needs reminding of these activities. R. 195, 385, 388. The record also shows that Rasmussen is capable of driving and shopping, R. 196, 216, 237, that he does not cook because he overeats, R. 195, and that he is capable of handling money—though he may do so unwisely. R. 197, 237. Additionally, Dr. Sandra Francis, a State agency psychologist, found only mild restrictions in activities of daily living, while Dr. A. John Kalil, another State agency psychologist, found moderate limitations; both state agency psychological consultants found only moderate limitations in social functioning and concentration, persistence, and pace. R. 462, 556. The opinions of Drs. Francis and Kalil were considered by the ALJ in step four and given some, but not controlling, weight. R. 27. In light of these opinions and the other evidence of record, I find that substantial evidence supports the ALJ's conclusion that Rasmussen suffered only moderate restrictions in the activities of daily living, and thus, do not meet the paragraph B criteria.

With regard to social functioning in step three, the ALJ pointed to Rasmussen's difficulties, including his lack of a social life outside of family, his preference not to be in group situations, and his statement that he gets negative and argumentative in conversations. R. 23. In his step four analysis, the ALJ elaborated on Rasmussen limited—but not non-existent—social life. R. 24. Rasmussen attends church two times a week for two to three hours and goes to his sister's home, but otherwise prefers to be alone and does not further socialize. R. 217. The ALJ also noted multiple times in his step four analysis that Rasmussen is currently able to work a part-time job as a cashier. R. 24, 26. The ALJ further noted Rasmussen's conservative medical care—particularly his complete lack of treatment for psychological impairments. R. 26-27. Additionally, at step four the ALJ discussed the findings of Dr. Christopher DeCario, as well as Drs. Francis and Kalil. R 26-27. Dr. DeCanio found that Rasmussen's mental impairment would likely interfere with basic social skills in the workplace, but did not find that Rasmussen was incapable of any social interaction whatsoever. In fact, he recommended Rasmussen seek part-time employment, and eventually, full-time employment. R. 389. Dr. Francis noted that despite Rasmussen's history of difficulty interacting with supervisors, he retained the ability to ask simple questions and accept instructions. R. 469. Based on this record, there is substantial evidence to support the ALJ's conclusion that Rasmussen suffered from moderate, but not marked, difficulties in social functioning.

Finally, with regard to concentration, persistence, and pace, the ALJ again pointed out Rasmussen's deficiencies in that he is physically slow, has poor concentration, and his attention span is less than five minutes. R. 23. But again, Rasmussen is able to work a part-time job as a cashier. The medical opinions of the examining and non-examining psychological experts all

indicate that he is capable of completing simple, routine tasks and maintaining consistency. R. 388, 469, 562. Substantial evidence therefore supports the conclusion that Rasmussen has the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1200(C)(3) (describing concentration, persistence, and pace). Furthermore, the ALJ's discussion of this evidence at step three is blustered by his lengthy discussion of this evidence at step four. R. 26-27.

Thus, the ALJ's opinion at step three that Rasmussen does not meet or medically equal a mental disorder at § 12.00 is supported by substantial evidence, despite its brevity. A reasonable mind might accept the above evidence as adequate to support the conclusions that Rasmussen's activities of daily living, social functioning, and concentration, persistence, and pace are not impaired to a degree that "interfere[s] seriously with [his] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1200(C) (defining a marked limitation). Furthermore, when considering the opinion as a whole, the ALJ's discussion of the evidence is sufficient detailed to satisfy the Court that he considered the entirety of evidence of record and to enable meaningful judicial review. Finally, despite Rasmussen's claim to the contrary, the ALJ's analysis of the record evidence does support the conclusion he ultimately reached—that Rasmussen does not meet or medical equal a mental disorder listing.

**Residual Functional Capacity Assessment**

Next, Rasmussen argues that the limitation in the residual functional capacity (RFC) that Rasmussen have "no interaction with the public and occasional interaction with supervisors and peers," R. 23-24, is inconsistent with the clinical evidence. Specifically, Rasmussen points to the evaluation of Dr. DeCanio, which made no distinction with whom Rasmussen can interact: "A pervasive developmental disorder exists that will likely interfere with the basic social skills required for interaction with the general public, coworkers, and supervisors." R. 388. He also argues that Dr. DeCanio did not couch his ability to interact in terms of frequency. Pl.'s Br. 17-18.

Contrary to Rasmussen's argument, the ALJ considered Rasmussen's moderate difficulties in social interaction and incorporated them into his functional capacity assessment. Substantial evidence exists in the record to support the ALJ's conclusion that Rasmussen should have no interaction with the public and occasional interaction with supervisors and peers. Dr. DeCanio noted Rasmussen's difficulty with social interactions, R. 388, which is consistent with the opinions of Dr. Francis and Dr. Kalil, who determined that Rasmussen had only moderate difficulties in social interaction. R. 467, 561. While Dr. DeCanio did not distinguish between the public and coworkers or place frequency limitations on Rasmussen's ability to interact, he did not find that Rasmussen should have no social interaction whatsoever. In fact, he recommended Rasmussen seek part-time employment, and eventually, full-time employment. R. 389. Dr. Francis, noted that despite Rasmussen's history of difficulty interacting with supervisors, he retained the ability to ask simple questions and accept instructions. R. 469. Dr.

Francis also found that Rasmussen would be able to perform work that does not involve constant interaction with others. R. 469.

Rasmussen is currently receiving vocational training and is able to work a part-time job as a cashier for an average of fifteen to twenty hours each week. R. 48. The distinction is further supported by Rasmussen's statements about his job history. See R. 219 (noting that he has been fired for making unacceptable comments to customers). At the hearing before the ALJ, he specifically mentioned difficulties with customers as a reason for his termination in at least one instance. R. 58. While the distinction was not explicitly made by the psychological experts, the ALJ independently assessed Rasmussen's limitations based on the entire record. Substantial evidence supports his conclusion that rather than being able to have some interaction with all groups, Rasmussen is limited to no interaction with the public and occasional interaction with coworkers and supervisors.

**Vocational Expert Hypothetical**

Rasmussen's second argument regarding the RFC assessment is that a limitation to "simple, routine tasks" is not comprehensive enough to accurately define all of Rasmussen's limitations. As a result, Rasmussen argues, the hypothetical presented to the vocational expert failed to set out all of his limitations. Rasmussen points to his limitations in concentration, persistence, and pace, and argues that even simple, routine tasks often subject a worker to production quotas and rapid pace. Pl.'s Br. 19-20. However, substantial evidence supports a limitation to simple, routine tasks, which is sufficient to convey all of Rasmussen's limitations.

Contrary to Rasmussen's assertion, the ALJ is not required to produce a true "function-by-function" analysis under Social Security Ruling 96-8p. See Knox v. Astrue, 327 F. App'x

14

652, 657, (7th Cir. 2009) ("[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005))). The ALJ thoroughly reviewed the record, including the medical opinions of Dr. DeCanio and the two state agency psychologists. R. 24-27.

The ALJ found Rasmussen had moderate difficulties in concentration, persistence, and pace in step three of his analysis, and he specifically noted that his RFC assessment reflected the degree of limitation found in the paragraph "B" criteria. R. 23. The ALJ considered Rasmusen's limitations in concentration, persistence, and pace in his RFC assessment, and determined that restricting him to simple, routine tasks accommodate those limitations. This determination is supported by substantial evidence in the record. See Richter v. Comm'r of Soc. Sec., 379 F. App'x 959, 961 (11th Cir. 2010) ("[W]here medical evidence demonstrates that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence, and pace, our sister circuits have found that these restrictions sufficiently account for such deficiencies." (citations omitted)). In his psychological evaluation, Dr. DeCanio noted that Rasmussen "approaches tasks in a highly impulsive and rapid fashion often resulting in a great many commission errors, [but] [n]evertheless . . . appears to retain a fairly consistent approach, yet decay is noted and a substantial loss of constancy was noted at the end of the assessment." R. 387. Dr. DeCanio continued, finding that Rasmussen is "an individual who could complete repetitive tasks [as] [h]e appears to have the capabilities required for regular attendance, consistency, and replication of previously learned job functions." R. 388. In August 2007, Dr. Francis determined that Rasmussen was capable of working at a

consistent pace, making simple decisions, and carrying out very short and simple instructions. R. 469. Dr. Francis also found that Rasmussen "can sustain an ordinary routine or repetitive work without special supervision" and that "[h]is limitations in all areas are . . . not so severe as to preclude performance of routine work tasks." R. 469. Similarly, Dr. Kalil noted in January 2009 that Rasmussen can perform simple, routine, repetitive work; follow simple job instructions; make simple decisions; and function in production-oriented jobs requiring little independent decision making. R. 562. Dr. Kalil concluded that Rasmussen "retains the ability to perform repetitive work activities without constant supervision." R. 562. It is clear that the ALJ considered all of the evidence in the record when formulating the hypothetical given to the vocational expert. Thus, I conclude that the hypothetical given to the vocational expert adequately accounted for all impairments reflected in the record.

**Examining Psychologist Evidence**

Rasmussen also argues that the ALJ failed to assess the opinion of an appropriate examining medical source. Dr. DeCanio found that Rasmussen should apply for disability benefits for immediate support, that part-time employment would be helpful for increased self-confidence and self-worth. R. 389. Dr. DeCanio also notes that "[a]s [Rasmussen] develops more and more social and professional success, full-time employment should be explored." R. 389. Rasmussen points out that the ability to work under the Act is the ability to work full time. Pl.'s Br. 21. He also points out that this opinion is consistent with a Vocational Evaluation Report completed by the Woodrow Wilson Rehabilitation Center. See R. 603-12.

A claimant's RFC must be based upon all of the relevant evidence—which includes the medical records, medical source opinions, and the individual's subjective allegations and

16

description of his own limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  "An RFC assessment must always consider and address medical source opinions." S.S.R. 96-8p.  However, medical source opinions on issues reserved to the Commissioner, including whether an individual is disabled under the Act, are never entitled to controlling weight or special significance.  S.S.R. 96-5p.  The ALJ considered all of the evidence—not just the conclusory opinion of Dr. DeCanio that Rasmussen should apply for disability benefits—when independently assessing Rasmussen's RFC, as he was required to do.  In fact, the ALJ quoted the exact passage from Dr. DeCanio's evaluation cited by Rasmussen. R. 26.  Additionally, Dr. DeCanio did not state that Rasmussen would forever be unable to work full time.  As discussed above, the ALJ's RFC assessment is supported by substantial evidence—including the opinions of Dr. DeCanio.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: August 20, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge